**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEORGE MOUNDREAS & CO SA, <br><br> Petitioner, <br><br> vs. <br><br> JINHAI INTELLIGENT MANUFACTURING CO LTD f/k/a JINHAI HEAVY INDUSTRY CO LTD AND ZHOUSHAN JINHAIWAN SHIPYARD CO LTD, HNA GROUP CO., LTD. a/k/a HAINAN GROUP HNA, LLC, HAINAN AIRLINES HOLDING CO., LTD., AND GRAND CHINA LOGISTICS HOLDING (GROUP) CO. LTD., <br><br> Respondents. | No. 1:20-cv-02626-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS HNA GROUP CO., LTD., HAINAN AIRLINES HOLDING CO., LTD., AND GRAND CHINA LOGISTICS HOLDING (GROUP) CO. LTD.'S MOTION TO DISMISS THE PETITION**

Dated: June 10, 2020

Phoebe A. Wilkinson
Marisa H. Lenok
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T:  212-918-3000
F:  212-918-3100

*Attorneys for Respondents HNA Group Co., Ltd. a/k/a Hainan Group HNA, LLC, Hainan Airlines Holding Co., Ltd., and Grand China Logistics Holding (Group) Co. Ltd.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

    A.   The Parties ................................................................................................................ 2

    B.   Moundreas and Jinhai Arbitrate A Contractual Dispute in the UK ........................... 3

    C.   The Present Action .................................................................................................... 4

ARGUMENT .......................................................................................................................... 7

   I.    LEGAL STANDARD ................................................................................................ 7

   II.   THE COURT LACKS PERSONAL JURISDICTION OVER THE RESPONDENTS ................ 7

    A.   The Court Does Not Have General Jurisdiction Over Any of the Respondents ......................... 8

    B.   The Court Lacks Specific Jurisdiction Over Any of the Respondents ...................................... 10

    C.   There is no "Alter-Ego" Jurisdiction Here ............................................................... 12

    D.   The Exercise of Personal Jurisdiction Would Violate Due Process ........................... 13

   III.   VENUE IS NOT PROPER HERE ............................................................................... 15

   IV.   MOUNDREAS' CLAIMS SHOULD BE DISMISSED IN LIGHT OF THE PRIOR PENDING CHINESE PROCEEDINGS ...................................................................................... 16

CONCLUSION ..................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3573522 Canada Inc. v. N. Country Nat. Spring Water, Ltd.*,
   210 F.R.D. 544 (E.D. Pa. 2002) ................................................................................................. 15

*Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*,
   169 F. Supp. 3d 523 (S.D.N.Y. 2016) ..................................................................................... 11

*AmTrust Fin. Servs. Inc. v. Lacchini*,
   260 F. Supp. 3d 316 (2d Cir. 2017) .......................................................................................... 8

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016). ................................................................................................... 10

*Brown v. Showtime Networks, Inc.*,
   394 F. Supp. 3d 418 (S.D.N.Y. 2019) ....................................................................................... 8

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
   90 F. Supp. 3d 97 (S.D.N.Y. 2015) ........................................................................................... 9

*Chloe v. Queen Bee of Beverly Hills*,
   616 F.3d 158 (2d Cir. 2010) .................................................................................................... 14

*Chufen Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020) ...................................................................................................... 9

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ......................................................................................................... 1, 8, 9

*In re Del Valle Ruiz*,
   342 F. Supp. 3d 448 (S.D.N.Y. 2018) ..................................................................................... 10

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*,
   No. 12 CIV. 6390 (JPO), 2013 WL 1775440 (S.D.N.Y. Apr. 25, 2013) .............................. 13

*Famular v. Whirlpool Corp.*,
   No. 16 CV 944 (VB), 2017 WL 2470844 (S.D.N.Y. June 7, 2017) ............................... 7, 9, 10

*Frontera Res. Azerbaijan Corp. v. State Oil Comp. of the Azberijan Republic*,
   582 F.3d 393 (2d Cir. 2008) ...................................................................................................... 8

*Gerling Glob. Reinsurance Corp. v. Sompo Japan Ins. Co.*,
   348 F. Supp. 2d 102 (S.D.N.Y. 2004) ..................................................................................... 11

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ........................................................................8

*Gucci America, Inc. v. Weixing Li*
768 F.3d 122 (2d Cir. 2014) ........................................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ....................................................................................10

*Louis Vuitton N. Am., Inc. v. Schenker, S.A.*,
17-CV-7445 (DLI)(PK), 2019 WL 1507792 (E.D.N.Y. Mar. 31, 2019) ..............16

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013) ........................................................................11

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
975 F. Supp. 2d 392 (S.D.N.Y. 2013) ..............................................................6

*Nebgen v. Schentag*,
No. 18 CIV. 8410 (ER), 2020 WL 1529452 (S.D.N.Y. Mar. 31, 2020) ...........7, 15

*Ole Media Mgmt., L.P. v. EMI April Music, Inc.*,
No. 12 CIV 7249 (PAE), 2013 WL 2531277 (S.D.N.Y. June 10, 2013) ..............16

*Person v. Google Inc.*,
456 F. Supp. 2d 488 (S.D.N.Y. 2006) ..............................................................7

*Porina v. Marward Shipping Co., Ltd.*,
521 F.3d 122 (2d Cir. 2008) ........................................................................13

*Ramgoolie v. Ramgoolie*,
16-CV-3345 (VEC)(SN), 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017)
(Caproni, J.) ..............................................................................................12

*Santamaria v. Hilton Worldwide, Inc.*,
19-CV-10795 (VEC), 2020 WL 2036724 (S.D.N.Y. Apr. 28, 2020)
(Caproni, J.) ..............................................................................................12

*Sea Eagle Maritime Ltd. v. Hanan Int'l Inc.*,
No. 84 Civ. 3210 (PNL), 1985 WL 3828 (S.D.N.Y. Nov. 14 1985) ...................12

*Six Dimensions, Inc. v. Perficient, Inc.*,
No. 15 CIV. 8309 (PGG), 2017 WL 10676897 (S.D.N.Y. Mar. 28, 2017) ........7, 15

*In re SSA Bonds Antitrust Litig.*,
420 F. Supp. 3d 219 (S.D.N.Y. 2019) ..........................................................7, 13

iii

*Statek Corp. v. Coudert Bros. LLP*,
   No. 3:07-CV-00456 (SRU), 2018 WL 834227 (D. Conn. Feb. 12, 2018)...........................14

*Taormina v. Thrifty Car Rental*,
   No. 16-CV-3255 (VEC), 2016 WL 7392214 (S.D.N.Y. Dec. 21, 2016)
   (Caproni, J.) ............................................................................................................9, 12

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ...................................................................................................13

*Weinar v. Lex*,
   No. 13 CIV. 1511 (DAB), 2014 WL 325698 (S.D.N.Y. Jan. 23, 2014)................................11

*Williams v. Beemiller, Inc.*,
   33 N.Y.3d 523 (2019).....................................................................................................12

**Statutes**

9 U.S.C. § 1 *et seq*...............................................................................................................4

9 U.S.C. § 201 *et seq*........................................................................................... 4, 11, 14, 15

28 U.S.C. § 1391(b) ........................................................................................................ 14, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)......................................................................................................1, 7

Fed. R. Civ. P. 12(b)(3)......................................................................................................1, 7, 15

N.Y. C.P.L.R. § 302(a)........................................................................................................11

Respondents HNA Group Co., Ltd. a/k/a Hainan Group HNA, LLC ("HNA Group"),
Hainan Airlines Holding Co., Ltd. ("Hainan Air"), and Grand China Logistics Holding (Group)
Co. Ltd. ("Grand China," and together with HNA Group and Hainan Air, the "Respondents")
respectfully submit this Memorandum of Law in support of their motion to dismiss the Petition
to Confirm Foreign Arbitration Award, dated March 27, 2020 (Dkt. No. 9) (the "Petition" or
"Pet.") filed by Petitioner George Moundreas & Co SA ("Moundreas") pursuant to Federal Rules
of Civil Procedure 12(b)(2) and (b)(3).

## PRELIMINARY STATEMENT

Moundreas commenced this litigation to confirm and enforce two foreign arbitration
awards against Jinhai Intelligent Manufacturing Co Ltd f/k/a Jinhai Heavy Industry Co Ltd and
Zhoushan Jinhaiwan Shipyard Co Ltd ("Jinhai") and its purported "alter-egos," the Respondents.
But this action — which is based on a handful of conclusory allegations supporting Moundreas'
alter ego theory — does not belong in this Court.  This Court lacks personal jurisdiction over the
Respondents, each of which is a foreign company organized under the laws of the People's
Republic of China.  None of them is incorporated, headquartered or has its principal places of
business in New York.  And the Petition's allegations that the Respondents are each "registered
to do business in New York" and have designated CT Corporation as their agent in the state are
not enough to subject the Respondents to the general jurisdiction of the Court post-*Daimler AG
v. Bauman*, 571 U.S. 117 (2014).

Furthermore, this Court does not have specific jurisdiction over any of the Respondents
— the Petition does not identify any statutory basis for jurisdiction or any connection between
the Respondents, the underlying dispute and New York.  The arbitration — in which none of the
Respondents was named or participated — occurred in Europe and was determined under

English law, as the arbitration agreement required.  The arbitrator issued two awards against co-defendant Jinhai, not the Respondents.  And the underlying contract, pursuant to which the arbitration was commenced, concerns foreign conduct (i.e., the building of ships in China) and was executed by Jinhai and Moundreas, two foreign companies with no alleged or apparent contacts with New York.  Nonetheless, Moundreas now attempts to pursue an action here to hold HNA Group, Hainan Air and Grand China accountable for Jinhai's alleged breach on a non-meritorious alter-ego theory.  Due process prohibits the adjudication of that issue here, given the lack of necessary connections between the parties and this forum.  For these same reasons, venue is improper in this district.  Additionally, proceedings commenced by Moundreas in China, prior to the filing of this action, warrant dismissal of this New York action.

Accordingly, the Petition should be dismissed.

## BACKGROUND

### A.     The Parties

George Moundreas & Co SA (hereafter "Moundreas" or "Petitioner") is a foreign corporation "organized under the laws of Panama with its registered address at Ave. Fenderico, Boyd Piso No. 12, Panama and place of business at 39 Akakion St, 151 25, Maroussi, Greece."  Pet. ¶ 4.  Moundreas is a shipbroker "with strong links to the Greek shipowning market."  Pet., Ex. 2 ¶ 13.

Jinhai is a foreign shipyard and shipbuilding company "organized under the laws of the People's Republic of China."  Pet. ¶ 5.  Jinhai's shipyard is located at "No. 1 Jinhai Street, Changtu, Daishan, Zhoushan, Zhejiang, China."  *Id*.  Moundreas contends that Jinhai also operates from corporate addresses which it purportedly shares with HNA Group, including 24th Floor No 588 Pudong South Road (Pufa Tower), Shanghai, China and HNA Tower, 5F, HNA Plaza, No. 896 Puming Road, Pudong, Shanghai, China.  *Id*.

2

HNA Group is a "foreign company" located in China.  Pet. ¶ 6.  Hainan Air is currently China's fourth largest airline and provides flights throughout China and internationally on a limited basis.  *Id.* ¶ 51, Ex. 12.  Like HNA Group, Hainan Air is a foreign company located in China.  *Id.* ¶ 7.  Hainan Air is a public company and it shares are traded on the Shanghai Stock Exchange.  *See* "Hainan Airlines Holding Co Ltd," https://www.bloomberg.com/quote/600221:CH (last visited June 10, 2020).  Grand China is a logistics and transportation company and is alleged to be the majority owner of Jinhai. Declaration of Jiajia Qiu, dated March 25, 2020 (Dkt. No. 9-12) ("Qiu Declaration" or "Qiu Decl.") ¶ 8.  It is also a foreign company located in China.  Pet. ¶ 8.

HNA Group, Hainan Air and Grand China are registered as foreign companies with the New York State, Divisions of Corporations.  Declaration of Phoebe A. Wilkinson, dated June 10, 2020 ("Wilkinson Decl."), Exs. A-C.  Each has designated CT Corporation, 28 Liberty Street, New York, New York, 10005 as its registered agent in New York State.  *Id.*; Pet. ¶¶ 6-8.  Jinhai is not registered to do business in New York, nor has it designated a registered agent in the state.[1] *See* Pet. ¶¶ 3, 5.

### B.    Moundreas and Jinhai Arbitrate A Contractual Dispute in the UK

In 2011 and 2012, Moundreas entered into various contracts (the "Contracts") with Jinhai related to the building of ships.  *Id.*, Ex. 1 ¶ 1; *id.* Ex. 2 ¶¶ 1, 13.  Moundreas allegedly "organized and brokered meetings in Greece" in order to "facilitate new business and potential shipbuilding contracts."  *Id.* ¶ 19.  Moundreas contends that, pursuant to the Contracts, it was

---

[1]  On April 17, 2020, Moundreas attempted to effect service of process on each of the Respondents by leaving the operative papers in a CT Corporation "drop box" on Liberty Street in Manhattan during the Covid-19 pandemic.  Affidavits of Service, dated April 17, 2020 (Dkt. Nos. 19-24).  Not one of those attempts actually reached the Respondents.  Jinhai "has not yet been served" and Moundreas concedes it may take six to twelve months to affect service on the entity.  Letter from Michael G. Chalos, dated May 26, 2020 (Dkt. No. 42).

owed various commissions from Jinhai as a shipbroker, which Jinhai "failed, neglected, and/or refused" to pay. *Id.* ¶ 10. As a result, Moundreas "commenced arbitration [against Jinhai] in London on each of the unpaid [Contracts] relating to Hulls J0162, J0163, J0164, J0165, and J0166." *Id.* ¶ 11. HNA Group, Hainan Air and Grand China were not named in the arbitration and did not participate in the proceedings. *See id.*, Exs. 1, 2.

The arbitrator — an English barrister (the "Arbitrator") — issued two awards related to the arbitration in favor of Moundreas. *Id.* ¶¶ 11-14. The first was in the amount of $501,300, plus interest, *id.* ¶ 13, Ex. 13, and the second was in the amount of $1,780,000, *id.* ¶ 14, Ex. 2. The Arbitrator's awards apply English law and do not address the Respondents' alleged "alter ego" relationships with Jinhai. *See generally id.*, Exs. 1, 2. Moundreas has commenced two actions seeking to recognize and enforce the awards in China, both of which are still pending (the "Chinese Proceedings"). Qiu Decl. ¶¶ 14-19.

## C.    The Present Action

Despite having other proceedings underway in China against Jinhai, on March 27, 2020, Moundreas filed a petition in this Court seeking to confirm and enforce both arbitral awards against Jinhai and the Respondents pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et. seq. See generally* Pet. Here, Moundreas seeks to recognize and enforce the two awards against each of the three Respondents based on an alter ego theory. Moundreas simply, and in conclusory fashion, does nothing more than claim that each of the three Respondents is the "alter-ego" of Jinhai, *id.* ¶¶ 6-8, and that HNA Group and its affiliated/subsidiary companies (including Hainan Air, a publicly traded company) purportedly have caused "the formation and incorporation of numerous corporate entities" in order to allegedly engage "in beneficial

transactions, breach unfavorable contracts when market conditions move against them, and to avoid creditors by moving assets away from indebted companies and into new companies within the web of corporate subsidiaries," *id.* ¶¶ 15-16.  But the Petition contains few, if any, legitimate factual allegations to support these claims or to even suggest that there is any basis to believe that Jinhai is dominated and controlled by any of the Respondents.

For example, while Moundreas alleges that HNA Group, Hainan Air and Grand China are the "corporate parents" of Jinhai, *id.* ¶ 26, it also acknowledges that Jinhai's shares are owned by at least eight different entities, none of which is HNA Group or Hainan Air.  *See id.* ¶ 34; Qiu Decl. ¶ 7.  HNA Group and Hainan Air are allegedly connected to Jinhai only indirectly, through various levels of companies in which they allegedly hold shares.  Qiu Decl. ¶ 10; *id.* Annex 1 at 7-15.  Besides Grand China, none of these entities is named in this lawsuit.  Relying on a handful of communications exchanged between Moundreas and Jinhai personnel, Moundreas contends that the decision-making of Jinhai was controlled by HNA Group and/or Grand China, s*ee*, *e.g.*, Pet. ¶¶ 22-23, but fails to provide examples where either Respondent exercised such control.  Similarly, the Petition claims that Jinhai was supported financially by HNA Group, *id.* ¶¶ 23-25, but does not provide details about financing provided directly by HNA Group to Jinhai.  Instead, the Petition references a capital "commitment" and "line of credit" allegedly given by two other non-party entities, Grand China Ship Leasing Co. Ltd. and China Development Bank.  *Id.* ¶¶ 24-25.  And exhibits annexed to the Petition indicate that Jinhai received financial support from other entities and banks, unrelated to HNA Group.  *See id.*, Ex. 6 ("As discussed during the meeting, being a regional large enterprise, our shipyard got great support and concern from local government in terms of capital, labors and policies under

5

the present market."); *id.*, Ex. 7 ("We also have similar financial arrangement with banks and/or leasing company for other projects.").

Furthermore, other documentation submitted in support of the Petition shows that Jinhai and each of the Respondents maintained and respected corporate formalities.  These documents further crater Moundreas' alter ego claims.  For example, presentations annexed to the Petition list Jinhai as a distinct and separate corporate entity within the HNA group of companies.  *See id.*, Ex. 3, Pt. 1 at 4; *id.*, Ex. 3, Pt. 2 at 4.  And the Qiu Declaration, which Moundreas references extensively in the Petition, describes a series of unrelated pledge agreements allegedly issued by Grand China and various non-parties, each of which was registered with the "Market Supervision Administration of Zhoushan Municipality" in China.  Qiu Decl. ¶¶ 6, 12.

In essence, the Petition alleges nothing more than: (1) the Respondents are shareholders of Jinhai, Pet. ¶ 18; (2) Jinhai was promoted or marketed as a part of the "HNA Group of Companies," *id.* ¶¶ 16, 28; (3) HNA Group affiliated entities provided financial support to Jinhai and its shipping yard, *id.* ¶ 24; (4) Jinhai and the Respondents share corporate offices and utilize a common logo, *id.* ¶¶ 48-49; and (5) two former personnel of Jinhai who now have positions with HNA Group, Qiu Decl. ¶ 12.  Yet, courts analyzing the issue under U.S. law,[2] have rejected similar allegations at the motion to dismiss stage finding them insufficient to establish alter-ego or to warrant the piercing of any corporate veil.  *See, e.g.*, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) ("It is well established law that allegations of mere shared management, shared corporate principles, or a parent's ownership and operation of a subsidiary—even exclusively for the parent's gain—do not merit piercing the corporate veil.").

---

[2]  The Petition does not contain any allegations regarding which country's or state's law governs the alter ego issue.  Respondents reserve their right to challenge choice of law should this case proceed beyond the motion to dismiss stage.

## ARGUMENT

## I.    LEGAL STANDARD

"The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." *Nebgen v. Schentag*, No. 18 CIV. 8410 (ER), 2020 WL 1529452, at *3 (S.D.N.Y. Mar. 31, 2020).  Under either Rule 12(b)(2) or (b)(3), the Petitioner bears the burden of showing that the court has personal jurisdiction over each Respondent and that venue is proper.  *See id.*; *Six Dimensions, Inc. v. Perficient, Inc.*, No. 15 CIV. 8309 (PGG), 2017 WL 10676897, at *3 (S.D.N.Y. Mar. 28, 2017) ("Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has the burden of pleading venue.") (quoting *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006)).  "To meet this burden, the plaintiff must plead facts sufficient for [a] prima facie showing of jurisdiction or venue." *Nebgen*, 2020 WL 1529452, at *3.

The Court may consider materials outside the pleadings when deciding a motion to dismiss under either Rule 12(b)(2) or (b)(3).  *Six Dimensions, Inc.*, 2017 WL 10676897, at *3; *Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 WL 2470844, at *2 (S.D.N.Y. June 7, 2017).  Factual allegations in the Petition should not be accepted as true, unless contradicted by evidence.  *See Six Dimensions, Inc.*, 2017 WL 10676897, at *3 (citation and internal quotation marks omitted).  And the Court is not bound to accept as true "legal conclusion[s] couched as a factual allegation[s]."  *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 229 (S.D.N.Y. 2019).

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER THE RESPONDENTS

To hear a petition to confirm a foreign arbitration award, a court must have jurisdiction over each Respondent.  *See Frontera Res. Azerbaijan Corp. v. State Oil Comp. of the Azberijan*

*Republic*, 582 F.3d 393, 398 (2d Cir. 2008) ("'Some basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the court's power.'") (quoting *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1122 (9th Cir. 2002)).  The Second Circuit applies a two-step analysis in assessing personal jurisdiction.  First, a Court must assess whether the "defendant is subject to the general jurisdiction of a court of the state in which the federal court sits" or whether there is a statutory basis for the exercise of "specific" personal jurisdiction. *AmTrust Fin. Servs. Inc. v. Lacchini*, 260 F. Supp. 3d 316, 326-27 (2d Cir. 2017).  Second, assuming the first criterion is met, the Court must determine whether the exercise of personal jurisdiction over the defendant is consistent with due process under the Constitution.  *Id.* Because the allegations in the Petition fail to satisfy either criterion, this Court should decline to exercise personal jurisdiction over any of the Respondents.

### A.   The Court Does Not Have General Jurisdiction Over Any of the Respondents

The Court does not have general jurisdiction over any of the Respondents pursuant to the Supreme Court's decision in *Daimler*.  In *Daimler*, the Supreme Court held that a corporation is only subject to general jurisdiction in those forums where it is essentially "at home," namely "its place of incorporation and its principal place of business." *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 431 (S.D.N.Y. 2019) (citing *Daimler*, 571 U.S. at 139).  For the Respondents, neither location is New York.  The Petition concedes that each Respondent is a "foreign company organized under the laws of the People's Republic of China."  Pet. ¶¶ 6-8. And the Petition does not — because it cannot — allege that any Respondent is incorporated, headquartered or maintains its principal place of business in New York.

Indeed, the only New York connection identified in the Petition is that each company is allegedly "registered to do business in New York and has designated a registered agent at:  CT Corporation, 28 Liberty Street, New York, New York 10005."  *Id.*  This is insufficient to establish general jurisdiction.  Post-*Daimler*, Courts have routinely held that they cannot exercise general personal jurisdiction over foreign defendants "merely because [they] registered to do business in New York and designated a local agent in the state."  *Famular*, 2017 WL 2470844, at *5; *Chufen Chen v. Dunkin' Brands, Inc*., 954 F.3d 492, 499 (2d Cir. 2020) ("[I]n light of *Daimler*, our own precedent, and the unanimous conclusion of the three New York intermediate courts to have considered the issue, we now hold that a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process under BCL § 1301(a)."); *Taormina v. Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 WL 7392214, at *7 (S.D.N.Y. Dec. 21, 2016) (Caproni, J.) ("[T]his Court declines to conclude that Hertz's registration to do business and appointment of an agent for service of process constitute consent to general jurisdiction."); *Chatwal Hotels & Resorts LLC v. Dollywood Co*., 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) ("After *Daimler*, with the Second Circuit cautioning against adopting 'an overly expansive view of general jurisdiction,' the mere fact of [defendant] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business.") (internal citation omitted).  There is no reason for this Court to deviate from these holdings.

Moreover, a foreign corporation's contacts with New York even if deemed "systematic and continuous" are generally not sufficient to subject it to the general jurisdiction of New York courts.  For example, in *Gucci America, Inc. v. Weixing Li*, the Second Circuit concluded that

9

*Daimler* prohibited the exercise of general jurisdiction in New York over a foreign bank even though it had a branch and conducted business in the state.  *See* 768 F.3d 122, 135 (2d Cir. 2014) ("BOC's activities here, as with those of the defendant in *Daimler*, 'plainly do not approach' the required level of contact.").  And in *Brown v. Lockheed Martin Corp.*, the Second Circuit similarly found a lack of general jurisdiction even though the defendant had operated in the forum for decades, by, among other things, leasing a "9,000 square foot building," employing "30-70" workers in the state, paying state taxes, and deriving "$160 million in revenue" from work in the state.  814 F.3d 619, 628 (2d Cir. 2016).  The Petition does not include any such allegations regarding the Respondents.  But even if it did, it would not be sufficient to warrant the exercise of general jurisdiction over HNA Group, Hainan Air or Grand China.  *Id.*; *see also In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 456 (S.D.N.Y. 2018) (granting motion to dismiss for lack of personal jurisdiction even where defendant "maintain[ed] branches in New York City, [was] supervised by the New York State Department of Financial Services, and manage[d] $14.8 billion in assets here as of 2013").

**B.     The Court Lacks Specific Jurisdiction Over Any of the Respondents**

The Court also lacks specific jurisdiction over any of the Respondents.  Specific personal jurisdiction over a defendant exists "in a suit arising out of or related to the defendant's contacts with the forum."  *Famular*, 2017 WL 2470844, at *3 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  But here there is no connection between Moundreas' lawsuit, any of the three Respondents and New York.  The arbitral awards Moundreas seeks to confirm and enforce were issued in the United Kingdom by an English Arbitrator applying English law.  *See* Pet., Exs. 1, 2.  Respondents were not named, and did not participate in the proceedings (held in Europe).  And the Contracts upon which the awards are

based were executed by two foreign companies, Jinhai and Moundreas, and concern foreign conduct, namely the payment of commissions to Moundreas by Jinhai. *See id.*, Ex. 1 ¶ 7; *id.*, Ex. 2 ¶ 2. The Petition does not allege any connection between the Contracts, Respondents and New York.

Moreover, absent general jurisdiction, "[a] district court must have a statutory basis for exercising [specific] personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). No such jurisdiction exists here. The Petition does not identify any such statute,[3] and New York law — which applies to assess personal jurisdiction, *Weinar v. Lex*, No. 13 CIV. 1511 (DAB), 2014 WL 325698, at *3 (S.D.N.Y. Jan. 23, 2014) ("in a federal question case where the defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules") — does not provide a statutory basis to exercise jurisdiction.

New York's long-arm statute, N.Y. C.P.L.R. § 302(a), permits the exercise of personal jurisdiction over a "non-domiciliary" where the causes of action alleged relate to the defendants' (1) "transact[ion of] business within the state or contracts . . . to supply goods or services in the state"; (2) tortious conduct committed within the state; (3) tortious conduct committed "without the state causing injury to person or property within [New York] state"; or (4) the ownership, use or possession of real property "situated within [New York] state." *Id.* Moundreas does not — because it cannot — allege that any of the Respondents engaged in such conduct. Accordingly, the Petition must be dismissed. *See Santamaria v. Hilton Worldwide, Inc.*, 19-CV-10795 (VEC), 2020 WL 2036724, at *3 (S.D.N.Y. Apr. 28, 2020) (Caproni, J.) (dismissing complaint for lack

---

[3] The Petition alleges that "[j]urisdiction is proper in this Court pursuant to 9 U.S.C. § 203," Pet. ¶ 59, but this statute only addresses the Court's subject matter jurisdiction. 9 U.S.C. § 203; *Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*, 169 F. Supp. 3d 523, 526 (S.D.N.Y. 2016) ("Section 203 [of the FAA] provides federal subject matter jurisdiction for an 'action or proceeding falling under the Convention....'") (quoting *Gerling Glob. Reinsurance Corp. v. Sompo Japan Ins. Co.*, 348 F. Supp. 2d 102, 104 (S.D.N.Y. 2004)). It does not address whether this Court has personal jurisdiction over any of the Respondents.

of personal jurisdiction where plaintiff failed to adequately allege that specific jurisdiction is "permitted under [New York's] long-arm statute"); *Ramgoolie v. Ramgoolie*, 16-CV-3345 (VEC)(SN), 2017 WL 564680, at *2 (S.D.N.Y. Feb. 10, 2017) (Caproni, J.) (granting motion to dismiss where foreign defendants were not "at home" in New York and plaintiff failed to "establish any nexus between [the defendant's New York] transactions and her claims"); *Taormina*, 2016 WL 7392214, at *5 (plaintiff failed to establish "*prima facie* case of specific jurisdiction" where plaintiff did not allege that the activities relating to breach of contract claim occurred in New York); *Sea Eagle Maritime Ltd. v. Hanan Int'l Inc.*, No. 84 Civ. 3210 (PNL), 1985 WL 3828, at *2 (S.D.N.Y. Nov. 14 1985) (dismissing action for lack of personal jurisdiction where defendants "contracted no business and have no contact in New York"); *Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 530 (2019) (defendant, a merchant located in Ohio, lacked sufficient contacts with New York to warrant exercise of personal jurisdiction).

### C.    There is no "Alter-Ego" Jurisdiction Here

The Petition does not allege that the Respondents are subject to the personal jurisdiction of New York courts because they are the purported alter egos of Jinhai.  To the contrary, if anything, the Petition argues that the court has jurisdiction over *Jinhai* because of its alleged affiliation with each of the Respondents — apparently in recognition of the fact that Jinhai has no connection to New York whatsoever.  Pet. ¶ 5 ("[P]ersonal jurisdiction over JINHAI may be established over it through its registered alter-egos, [HNA Group, Hainan Air and Grand China].").  Regardless, even if the Court concluded that each Respondent was somehow an alter ego of Jinhai (which they are not, *see supra* Background, Sect. C), Jinhai is not alleged to have any connections to the United States, let alone New York, that could be attributed to any of the Respondents.  The Petition concedes that Jinhai is a Chinese corporation operating abroad, Pet. ¶

5, and that the underlying conduct that preceded this lawsuit occurred outside of the United

States, *id.* ¶¶ 11-14 (describing arbitration which occurred in Europe before an English

Arbitrator), 19 (referencing meetings held in Greece).  Accordingly, the Court lacks general and

specific jurisdiction over Jinhai.  *See supra* Argument, Sect. II.A-B.

### D.    The Exercise of Personal Jurisdiction Would Violate Due Process

Even if New York's long-arm statute were applicable (which it is not), due process would

still prohibit the Court's exercise of personal jurisdiction over any of the Respondents.  As the

Second Circuit has explained:

> Due process permits a court to exercise personal jurisdiction over a non-resident
> where the maintenance of the suit would not offend traditional notions of fair play and
> substantial justice.  To determine whether this is so, [courts] apply a two-step analysis
> in any given personal jurisdiction case. First, we ask whether the defendant has
> sufficient minimum contacts with the forum to justify the court's exercise of personal
> jurisdiction. . . .  If the defendant has sufficient minimum contacts, we proceed to the
> second stage of the due process inquiry, and consider whether the assertion of personal
> jurisdiction is reasonable under the circumstances of the particular case.

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, No. 12 CIV. 6390 (JPO), 2013 WL

1775440, at *5 (S.D.N.Y. Apr. 25, 2013) (quoting *Porina v. Marward Shipping Co., Ltd.*, 521

F.3d 122, 127 (2d Cir. 2008)).  Neither step in the Second Circuit's analysis is satisfied here.

As discussed above, the Petition does not identify sufficient contacts between

Respondents and New York to subject them to the general jurisdiction of the state.  *See supra*

Argument, Sect. II.A.  Nor does it identify any connection between any of the Respondents, the

underlying dispute (*i.e.*, Jinhai's alleged breach of the Contracts or the arbitration) and New

York.  *Supra* Argument, Sect. II.B.  Accordingly, the "minimum contacts" prong has not been

met.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("For a state to exercise jurisdiction

consistent with due process, the defendant's suit-related conduct must create a substantial

connection with the forum State."); *SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d at 240 (finding

"minimum contacts" not met where defendant not subject to general or specific jurisdiction of Court); *Statek Corp. v. Coudert Bros. LLP*, No. 3:07-CV-00456 (SRU), 2018 WL 834227, at \*20 (D. Conn. Feb. 12, 2018) (exercise of personal jurisdiction "fundamentally unfair" where "[defendant's] contacts with Connecticut were so insubstantial—and so unrelated to the claims in the case").

And, assuming arguendo, such contacts existed (which they do not), it is not reasonable to subject any of the Respondents to the jurisdiction of this Court. In assessing "reasonableness," courts consider the following five factors, which weigh against the exercise of jurisdiction here: "(1) the burden on the defendant[s], (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Statek Corp.*, 2018 WL 834227, at \*20 (quoting *Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 173 (2d Cir. 2010)). The burden on Respondents from litigating in New York would be "substantial" as the "parties, witnesses and center of activities giving rise to [Moundreas' alter ego] claims all are located [abroad]." *Statek Corp.*, 2018 WL 834227, at \*20. This lack of access to evidence also renders the action less efficient to try in New York. Thus, the fourth factor weighs against the exercise of personal jurisdiction. *See id.* The second and fifth factors also weigh heavily against personal jurisdiction, as New York's interest in litigating this matter is minimal, given neither Moundreas nor any of the Respondents have "significant connections" to the state. *Id.* at \*21. Accordingly, the Petition should be dismissed.

### III.    VENUE IS NOT PROPER HERE

Moundreas alleges that venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 9 U.S.C. § 204. Pet. ¶¶ 3, 60.  Not true — neither statute supports the claim.  Section 1391(b) states that a civil action may be brought in any judicial district:  (1) where "any defendant resides," (2) "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  *Id.*  None of these provisions is applicable here.  The Petition concedes that the Respondents do not reside in this district, Pet. ¶¶ 6-8 (the Respondents are each "foreign compan[ies] organized under the laws of the People's Republic of China"), and Moundreas does not allege (because it cannot) that any of the events giving rise to the Petition occurred in this district, nor does it identify any property within this district that is related to — let alone "the subject of" — these proceedings.  Furthermore, as discussed above, the Court does not have personal jurisdiction over any of the Respondents.  *See supra* Argument, Sect. II.A-B.

Moundreas' reliance on 9 U.S.C. § 204 is inapposite for similar reasons.  Section 204 provides that venue is proper in any district "designated in [an] agreement as the place of arbitration" or where "an action or proceeding with respect to the controversy between the parties could be brought."  *Id.*  The Petition does not identify any agreement or contract which designates the Southern District of New York (or any location in the United States) as the proper venue for these proceedings.  And courts have found that Section 204 cannot confer venue in a district court where, as here, "[t]he parties have no significant ties."  *3573522 Canada Inc. v. N. Country Nat. Spring Water, Ltd.*, 210 F.R.D. 544, 545 (E.D. Pa. 2002).  Accordingly, the Petition

must be dismissed on this basis as well.  *See id.*; *Nebgen,* 2020 WL 1529452 (dismissing complaint pursuant to Fed. R. Civ. P. 12(b)(3)); *Six Dimensions, Inc.*, 2017 WL 10676897 (same).

## IV.   MOUNDREAS' CLAIMS SHOULD BE DISMISSED IN LIGHT OF THE PRIOR PENDING CHINESE PROCEEDINGS

The Qiu Declaration states that, prior to the commencement of this action, Moundreas filed proceedings seeking to recognize and enforce the arbitration awards against Jinhai in China. Qiu Decl. ¶¶ 14-19.  The Qiu Declaration provides minimal details about these actions (which purportedly do not name any of the Respondents) and does not attach any of the filings made in China.  However, given that the Chinese Proceedings seek enforcement of the same arbitration awards, their enforcement appears to constitute a prior pending action that further weighs in favor of dismissal of this action.  *See Ole Media Mgmt., L.P. v. EMI April Music, Inc.*, No. 12 CIV 7249 (PAE), 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013) (A court has "the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction."); *Louis Vuitton N. Am., Inc. v. Schenker, S.A.*, 17-CV-7445 (DLI)(PK), 2019 WL 1507792, at *10 (E.D.N.Y. Mar. 31, 2019) ("LVNA chose the French courts as its preferred forum approximately one year before filing this action. That it now regrets that decision, or how the France Litigation has proceeded, is no reason to allow LVNA to start anew here.").

## <u>CONCLUSION</u>

For the reasons set forth herein, the Respondents respectfully request that the Court grant their motion to dismiss the Petition, with prejudice.

Dated:  June 10, 2020
        New York, NY

**HOGAN LOVELLS US LLP**

By: <u> /s/ Phoebe A. Wilkinson</u>
Phoebe A. Wilkinson
(phoebe.wilkinson@hoganlovells.com)
Marisa H. Lenok

16

(marisa.lenok@hoganlovells.com)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T:  212-918-3000
F:  212-918-3100

*Attorneys for Respondents HNA Group Co., Ltd. a/k/a Hainan Group HNA, LLC, Hainan Airlines Holding Co., Ltd., and Grand China Logistics Holding (Group) Co. Ltd.*