USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/18/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
GEORGE MOUNDREAS & CO SA,                            :
                                                     :
                              Petitioner,            :
                                                     :          20-CV-2626 (VEC)
              -against-                              :
                                                     :          OPINION & ORDER
JINHAI INTELLIGENT MANUFACTURING CO                  :
LTD f/k/a JINHAI HEAVY INDUSTRY CO LTD               :
AND ZHOUSHAN JINHAIWAN SHIPYARD CO                   :
LTD, HNA GROUP CO., LTD. a/k/a HAINAN                :
GROUP HNA, LLC, HAINAN AIRLINES                      :
HOLDING CO., LTD., and GRAND CHINA                   :
LOGISTICS HOLDING (GROUP) CO. LTD.,                  :
                                                     :
                              Respondents.  :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Petitioner George Moundreas & Co SA ("Moundreas" or "Petitioner") filed a petition

pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the Convention on the

Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), 9 U.S.C. §

201 *et seq.*, to confirm and enforce two foreign arbitral awards against Respondent Jinhai

Intelligent Manufacturing Co Ltd ("Jinhai").  Am. Petition ¶¶ 1, 57, Dkt. 59.  Although

Moundreas and Jinhai were the only parties to the arbitration proceedings, Petitioner relies on an

alter-ego theory to seek enforcement of the arbitral awards against Jinhai and three others: HNA

Group Co., Ltd. ("HNA"), Hainan Airlines Holding Co., Ltd. ("Hainan"), and Grand China

Logistics Holding (Group) Co. Ltd. ("Grand China").  *Id.* ¶¶ 1, 52, 55.  HNA, Hainan, and Grand

China (collectively "Moving Respondents") moved to dismiss the Amended Petition for lack of

personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and

(3), respectively.  *See* Notice of Mot., Dkt. 67.  Alternatively, Moving Respondents seek

dismissal of the entire action due to concurrent proceedings in China.  Resp. Mem. at 23, Dkt.

68.  Because the Court does not have personal jurisdiction over Moving Respondents, the motion to dismiss is GRANTED.[1]

## BACKGROUND[2]

Petitioner, a shipbroker, is a foreign company registered under the laws of Panama with its principal place of business in Greece.  Am. Petition ¶ 4.  Jinhai, a shipbuilding company, is also a foreign company, registered under the laws of the People's Republic of China, with its shipyard located in China and its corporate activities conducted from China.  *Id.* ¶ 5.  In 2011 and 2012, in connection with a shipbuilding agreement, Petitioner and Jinhai entered into five Commission Agreements.  *Id.* ¶ 9; Sept. 25, 2019 Arb. Award ¶ 14, Dkt. 59-3.  When Jinhai failed to pay Petitioner's commissions, Petitioner commenced arbitration in London pursuant to the parties' contracts.  Am. Petition ¶¶ 10–11.  The London-based arbitrator issued two awards in favor of Petitioner for a total of approximately $2.3 million.  *See id.* ¶¶ 13–14.

In March 2020, Petitioner commenced this action against Jinhai and Moving Respondents to confirm and enforce the London arbitration awards.  *See* Petition, Dkt. 9.  Prior to doing so, Moundreas commenced two actions in China to enforce the arbitration awards; both of the Chinese actions are still pending.  Declaration of Jiajia Qiu ("Qiu Decl.") ¶¶ 14–19, Dkt. 59-12.

Moving Respondents are all foreign companies incorporated and with their principal places of business in China.  Am. Petition ¶¶ 6–8.  HNA, the alleged "Group Owner and

---

[1]     Because the Court finds that it does not have personal jurisdiction over Moving Respondents, the Court does not reach the venue-based motion.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (holding that, to best serve judicial economy, a "federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" (internal quotation marks and citation omitted)); *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[Because t]he question of personal jurisdiction . . . goes to the court's power to exercise control over the parties, [it] is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.").  For similar reasons, the Court does not address the concurrent proceeding issue.

[2]     For purposes of a motion to dismiss for lack of personal jurisdiction, the Court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor."  *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

Corporate Parent" of the other Respondents, operates a variety of interrelated global businesses, including airlines, airports, finance, logistics, property, retail, and tourism. *Id.* ¶¶ 6, 28–29. Hainan is the fourth largest airline in China and operates flights to numerous international locations. *Id.* ¶¶ 7, 51. Grand China is a logistics company that maintains a fleet of bulk carriers that operate into and out of many international ports. *Id.* ¶ 8.

Moving Respondents are each registered to do business in New York, and each has designated a registered agent in New York. *Id.* ¶¶ 6–8. According to Petitioner, each of the Moving Respondents conducts meaningful business activities in New York and in the United States. *Id.* HNA purportedly owns real estate in New York, owns a stake in several American companies, holds corporate functions in New York, and avails itself of New York's judicial system. *Id.* ¶ 6. Hainan operates flights into and out of New York and has allegedly executed agreements with local authorities allowing it to operate within the jurisdiction. *Id.* ¶ 7. Grand China's bulk carriers allegedly operate at New York's ports. *Id.* ¶ 8.

The Moving Respondents were not parties to the agreements between Moundreas and Jinhai, nor were they parties to the London arbitration. *Id.* ¶¶ 11, 13. Moundreas argues, however, that they are all alter egos of Jinhai, or, at the very least, HNA is Jinhai's alter ego, and Hainan and Grand China are both alter egos of HNA, creating an interconnected web of companies in which each is the alter ego of the other. *Id.* ¶¶ 15–55. According to Petitioner, Respondents are all part of the same "single business entity," with HNA serving as the parent and beneficial owner of an extensive web of subsidiaries, including Jinhai, Hainan, and Grand China. *Id.* ¶¶ 28, 32, 37; Pet. Resp. at 1 n.1, Dkt. 70. Moundreas seeks to recover the arbitration awards from all Respondents based on this alter-ego theory of liability. Am. Petition ¶¶ 65–66.

Moving Respondents have moved to dismiss the Amended Petition, arguing that this Court lacks personal jurisdiction.[3]  *See* Notice of Mot.

## DISCUSSION

### I.     Legal Standard on a Rule 12(b)(2) Motion to Dismiss

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction.  *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  When no discovery has taken place, however, a plaintiff need only make a *prima facie* showing of jurisdiction, which "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) (cleaned up); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 452 (S.D.N.Y. 2005).

In deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider materials outside the pleadings, including affidavits and other written materials.  *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).  "The court assumes the verity of the allegations 'to the extent they are uncontroverted by the defendant's affidavits,'" *id.* (quoting *MacDermid*, 702 F.3d at 727), and jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).  The Court, however, need not accept either party's legal conclusions as true nor will it draw "argumentative inferences" in either party's favor.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted).

---

[3]      Jinhai, which has not yet appeared in this action, does not join in Moving Respondents' motion.

## II.      Personal Jurisdiction

Although waivable, personal jurisdiction "is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).  Because the New York Convention confers only subject-matter jurisdiction, to enforce a foreign arbitral award "the enforcing court must have *in personam* or *quasi in rem* jurisdiction over the party ordered to pay."  *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11-CV-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012).

"District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction and second deciding whether the exercise of jurisdiction comports with due process." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349–50 (S.D.N.Y. 2014) (cleaned up).  In New York, the statutory bases for exercising personal jurisdiction can be found in N.Y. C.P.L.R. §§ 301 and 302.  *See Taormina v. Thrifty Car Rental*, No. 16-CV-3255, 2016 WL 7392214, at *3, 5 (S.D.N.Y. Dec. 21, 2016).

Personal jurisdiction may be either specific or general.[4]  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state."  *Id.*; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  General jurisdiction, or

---

[4]      A court may also exercise jurisdiction over property under an *in rem* theory of jurisdiction, or a court may rely on a *quasi in rem* theory of jurisdiction to obtain jurisdiction based on the presence of property within the forum jurisdiction.  *See Shaffer v. Heitner*, 433 U.S. 186, 199 (1977) (describing the concepts of *in rem* and *quasi in rem* jurisdiction).

"all-purpose" jurisdiction, on the other hand, allows a court to adjudicate any cause of action against the defendant, regardless of where it arose.  *Brown*, 814 F.3d at 624.

Regardless of whether personal jurisdiction is specific or general, "the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process, which requires that any jurisdictional exercise be consistent with 'traditional notions of fair play and substantial justice.'"  *Id.* at 625 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Thus, a court must determine whether the defendant has sufficient contacts with the forum to justify the court's exercise of personal jurisdiction and whether the exercise of personal jurisdiction would be "reasonable" under the circumstances. *See Chloe v. Queen Bee of Beverly Hill, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

### A.    General Jurisdiction

Petitioner argues that this Court may exercise general jurisdiction over Moving Respondents due to their "systematic and continuous contacts with the state of New York."  Pet. Resp. at 12.  Petitioner does not appear to argue that the Court has general jurisdiction over each Moving Respondent individually.  Instead, it presses the Court to assess Moving Respondents' contacts in the aggregate, pursuant to its alter-ego theory, to determine whether personal jurisdiction exists over all Moving Respondents.  *Id.* at 1 & n.1, 12–19.  In contrast, Moving Respondents argue that the Court must assess each Respondent's conduct in isolation. Regardless of whether their contacts are analyzed individually or collectively, Petitioner does not allege facts sufficient to satisfy the standard established by *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and its progeny.  Accordingly, the Court finds that Moving Respondents are not subject to general jurisdiction in New York.

### 1.  Legal Standard

Under N.Y. C.P.L.R. § 301, a court in New York may exercise general jurisdiction over an out-of-state defendant if the defendant "engaged in 'continuous, permanent, and substantial activity in New York.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).  In *Daimler*, however, the Supreme Court set a "high bar" for finding that the exercise of general jurisdiction over an out-of-state corporation comports with due process. *See Brown*, 814 F.3d at 626.  An out-of-state corporation is subject to general jurisdiction in a state "only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2013) (quoting *Daimler*, 571 U.S. at 139).  In the wake of *Daimler*, other than in "exceptional cases," a corporation is "at home" only in its state of incorporation and in the state of its principal place of business. *Id.* at 135.  Because a corporation operating in many states or countries "can scarcely be deemed at home in all of them . . . when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Brown*, 814 F.3d at 629 (cleaned up).

### 2.  Application

Moving Respondents are not subject to general jurisdiction in New York.  Petitioner falls woefully short of alleging facts that could establish general jurisdiction over any of the Moving Respondents, considered either individually or collectively.  Each Moving Respondent is a foreign company organized under Chinese law, incorporated in China, and headquartered in China.  Am. Petition ¶¶ 6–8.  As a result, Petitioner must allege facts demonstrating that this is

the "exceptional case" in which the Court may exercise general personal jurisdiction over a foreign company based only on its contacts with the forum state.  *See Daimler*, 571 U.S. at 139 n.19.

As an initial matter, Petitioner has failed to address Moving Respondents' New York activities "*in the context of the compan[ies'] overall activity* . . . 'in their entirety, nationwide and worldwide.'"  *Brown*, 814 F.3d at 629 (quoting *Daimler*, 571 U.S. at 139 n.20); *see also Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (finding no general jurisdiction even though defendant had numerous establishments in New York because plaintiffs did not allege facts showing that the defendant's contacts in New York were significant in relation to its nationwide business activity); *Taormina*, 2016 WL 7392214, at *5 (finding that there was no general jurisdiction even though defendant had almost 200 offices and locations in New York because defendant also had significant activity in other states).  Instead, Petitioner recites Moving Respondents' purported contacts within New York and contends, without more, that they are sufficient for the Court to exercise general jurisdiction.  Petitioner's own assertions in its pleading and affidavits, however, demonstrate that Moving Respondents have significant contacts with other jurisdictions within the United States and abroad, undermining its position that the Moving Respondents are "at home" in New York.  *See* Am. Petition ¶¶ 6–8 (emphasizing HNA's "role in creating jobs in New York and elsewhere in the US"); Declaration of Michael G. Chalos ("Chalos Decl.") at Ex. 4, Dkt. 71-4 (describing HNA as a "global company with over $90 billion of assets . . . and an international workforce of nearly 200,000 employees, primarily across North America, Europe and Asia); *id.* at Ex. 11, Dkt. 71-11 (stating that Hainan operates "more than 2,000 domestic and international routes . . . covering Asia, Europe, North America, South America and Oceania, and connecting 66 cities around the

world").  There is no basis for the Court to conclude on the strength of these allegations alone that Moving Respondents' New York-based activities are of such magnitude in comparison to the balance of their U.S.-based and international activities that they are subject to general jurisdiction in New York.  *See Gucci Am.*, 768 F.3d at 135 (finding no general jurisdiction when defendant's contacts were just a small portion of its worldwide business).

The fact that Moving Respondents are registered to do business in New York and have a designated local agent in the state does not lead to a different outcome.  *See Chufen Chen*, 954 F.3d at 499.  Because, however, courts have generally considered in-state registration and designation of a local agent in the context of deciding whether a defendant has *consented* to general jurisdiction, this Court agrees with Petitioner that it may consider those facts as part of its overall analysis of Moving Respondents' contacts with New York.  *See* Pet. Resp. at 9.  Nevertheless, registration and designation of an in-state agent are contacts of limited weight in assessing a foreign company's overall contacts with the forum state.  *See Brown*, 814 F.3d at 640 ("If mere registration and the accompanying appointment of an in-state agent . . . nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief.").

Considering Petitioner's allegations applicable to all Moving Respondents in conjunction with Petitioner's allegations specific to each of them, the Court finds that Petitioner has failed to allege facts establishing general jurisdiction over any of the Moving Respondents.  Further, the Court finds that adopting Petitioner's arguments and applying an alter-ego theory of jurisdiction, pursuant to which the Court assesses Moving Respondents' contacts in the aggregate, does not

change the analysis.  Weighing all alleged contacts in their totality, Petitioner has failed to allege

adequately that Moving Respondents are subject to general jurisdiction in New York.

### a.  HNA Group

In its Amended Petition, Petitioner alleges that HNA Group "has engaged in substantial

and meaningful business activities" in New York, including but not limited to:

- conducting several multi-million-dollar New York real estate transactions;

- hosting events in New York;

- maintaining a media relations team in New York;

- purchasing stakes in Hilton Worldwide Holdings and Deutsche Bank, which have

  properties, offices, or branches in New York;

- purchasing Ingram Micro Inc., a U.S.-based electronics distributor; and

- availing itself of the New York courts to sue a Chinese citizen.

Am. Petition ¶ 6.  In its opposition to the motion to dismiss, Petitioner adds several contacts that

are not plead in the Amended Petition:[5]

- additional real-estate activity in New York by HNA and its subsidiaries;[6]

---

[5]     Moving Respondents object to the Court's consideration of these additional allegations in deciding their motion to dismiss.  *See* Resp. Reply at 2 n.3, 3, Dkt. 75.  While Petitioner may not "supplement his [Petition] with facts asserted for the first time in his memorandum of law," *Taormina*, 2016 WL 7392214, at *4, the Court may consider facts asserted in the first instance in affidavits submitted in connection with a Rule 12(b)(2) motion to dismiss.  *See John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91-CIV-3644, 1992 WL 26765, at *1 (S.D.N.Y. Feb. 5, 1992) ("A Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings and all pertinent documentation submitted by the parties may be considered in deciding this motion."); *see also Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58–59 (2d Cir. 1981); *Jonas*, 116 F. Supp. 3d at 323.  The Court, therefore, may consider factual allegations contained in affidavits submitted in opposition to the motion to dismiss, to the extent they are uncontroverted by Moving Respondents' briefs and affidavits and no other law or policy prohibits the Court from taking them into consideration.

[6]     The Court will not consider Petitioner's allegations concerning property purchases by an HNA executive, Chen Guoquin, as there are no factual allegations that would allow the Court to impute his individual activity to any corporate entity.  *See* Pet. Resp. at 14.

- HNA and its subsidiaries applied for and received Paycheck Protection Plan ("PPP") loans and other financial benefits under the CARES Act;[7] and

- various business dealings with New York-based companies.

Pet. Resp. at 14–17.

Although HNA's alleged activities in New York are not insignificant, they simply do not rise to the level of the "exceptional case" contemplated in *Daimler*. As an initial matter, many of HNA's purported contacts, such as HNA's relationship with Hilton Worldwide, Deutsche Bank, and Ingram Micro Inc., have minimal or no nexus to New York. Hilton is incorporated in Delaware and its principal place of business is in Virginia. *See* Resp. Reply at 5, Dkt. 75 (citing Wilkinson Decl., Ex. F, Dkt. 76-6). Despite the presence of Hilton properties in New York, it is not a New York corporation. Similarly, Ingram Micro Inc. is incorporated in Delaware and its principal place of business is in California, so it, too, is not a New York corporation. *Id.* (citing Wilkinson Decl., Ex. G, Dkt. 76-7). In assessing whether the Court has general jurisdiction over Moving Respondents, the relevant inquiry looks to the relationship between Moving Respondents and New York, not the United States at large. *See Daimler*, 571 U.S. at 139. The fact that HNA owns publicly-traded shares of non-New-York-based, U.S. corporations does nothing to subject Moving Respondents to the exercise of general jurisdiction in New York. Similarly, Petitioner has failed to establish any connection between HNA's alleged CARES Act loans and contacts with New York. Even less helpful is Petitioner's allegation concerning HNA's ownership of Deutsche Bank stock. Although Deutsche Bank has several offices in New York, it is a German corporation, both incorporated and having its principal place of business in

---

[7]     The Court notes that the entities that received benefits under the CARES Act appear to be subsidiaries or separate entities that HNA allegedly owns and controls. The Court need not analyze whether the contacts of HNA's subsidiaries and affiliates can be imputed to HNA for purposes of the jurisdictional analysis because considering these contacts does not tilt the analysis in Petitioner's favor.

Germany.  *See* Resp. Reply at 5 (citing Wilkinson Decl., Ex. H, Dkt. 76-8).  As with HNA's

other holdings, owning shares of a foreign corporation that happens to have offices in New York

provides no basis for the exercise of general jurisdiction.  *Cf. Daimler*, 571 U.S. at 136 (rejecting

possibility of subjecting "foreign corporations to general jurisdiction whenever they have an in-

state subsidiary or affiliate").

The balance of Petitioner's factual allegations does little to persuade the Court that this is

the exceptional case contemplated in *Daimler*.  To exercise general jurisdiction over HNA based

on its real estate activities, occasional social events, employment of a media relations team in

New York, dealings with New York companies, and its one-time availment of the New York

Courts would lead to "an outcome that would sweep beyond even the sprawling view of general

jurisdiction [the Supreme Court] rejected in *Goodyear*." [8]  *Daimler*, 571 U.S. at 136 (citing

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 546 U.S. 915, 929 (2011)); *see also*

*Goodyear*, 564 U.S. at 927 ("A corporation's 'continuous activity of some sorts within a state'

. . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to

that activity.'") (quoting *Int'l Shoe*, 326 U.S. at 318); *Jayne v. Royal Jordanian Airlines Corp.*,

502 F. Supp. 848, 856 (S.D.N.Y. 1980) (finding defendant's public relations work in forum state

insufficient for general jurisdiction purposes where such contact is incidental to defendant's

primary business operations).  Courts in this circuit have repeatedly refused to exercise general

jurisdiction in cases in which foreign corporations have had similar, or even more substantial,

contacts with the forum state than HNA has with New York.  *See, e.g.*, *Brown*, 814 F.3d at 628

---

[8]     Moving Respondents also contend that several of Petitioner's allegations concerning HNA's contacts with New York cover conduct that occurred, and concluded, before Petitioner filed this action, and that the Court should therefore disregard those allegations.  *See* Resp. Reply at 3–4 (citing *Yurman Designs, Inc. v. A.R. Morris Jewelers, LLC*, 41 F. Supp. 2d 453, 457 (S.D.N.Y. 1999), for the proposition that, under N.Y. C.P.L.R. § 301, "a corporation's presence is determined based on the time the lawsuit is filed").  Because including these contacts in the Court's analysis does not change the outcome, the Court need not determine which of Petitioner's allegations concern pre-suit conduct and whether it would be proper to consider those allegations.

(finding no general jurisdiction even though defendant had between 30 and 70 employees in the state, leased property, and earned $160 million in gross revenue from its forum operations); *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 432–33 (S.D.N.Y. 2019) (finding no general jurisdiction even though defendant had entered into contracts with multiple New York-based companies, broadcast programming in New York, and employed journalists in New York); *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 456–57 (S.D.N.Y. 2018) (finding no general jurisdiction even though, among other contacts, Defendant managed $14.8 billion in assets in New York, was listed on the New York Stock Exchange, and "manage[d] its wholly owned U.S. subsidiaries from New York City").

The relevant inquiry is not whether a corporation's activities are "continuous and systematic" but whether its activities are "*so* continuous and systematic to render it at home in the forum state." *Daimler*, 571 U.S. at 761 (cleaned up). Although HNA may have continuous and systematic contacts with New York, these contacts hardly make HNA "at home" in New York. *See Gucci Am.*, 768 F.3d at 135 (2d Cir. 2014) (rejecting exercise of general jurisdiction over Bank of China, notwithstanding its business operations in New York, because "only a small portion of its worldwide business is conducted in New York"). Petitioner's claims that HNA has adopted a "self-narrative" of financially bridging the "East and West" through its businesses in New York and that New York is "recognized as the financial capital of the United States" are nothing more than conclusory allegations and a futile attempt to maneuver around established precedent. Pet. Resp. at 12. Looking to the specific, factual allegations pled in the Amended Petition and contained in Petitioner's affidavits submitted in opposition to the motion to dismiss, the Court finds that Petitioner has failed to allege facts that can support the Court's exercise of general jurisdiction over HNA in New York.

### b. Hainan

Hainan operates regularly scheduled flights into and out of New York's John F. Kennedy Airport ("JFK").  *See* Am. Petition ¶ 7; Pet. Resp. at 15.  In order to operate flights to New York (and to other American cities), Petitioner asserts that Hainan contracted with Boeing, a U.S.-based company, to lease or purchase aircraft, was "necessarily required to sign . . . agreements with the New York Port Authority," signed contracts with other service providers, and must have "obtain[ed] necessary permissions from the relevant U.S. governmental authorities."  Pet. Resp. at 15.  Petitioner acknowledges, however, that New York is just one of many cities in which Hainan operates in the United States.  *See* Am. Petition ¶ 7; Pet. Resp. at 16–17 (claiming Hainan flies to Chicago, Los Angeles, Las Vegas, Boston, and Seattle); Chalos Decl., Ex. 11 (showing that Hainan operates in 66 cities around the world, spanning multiple continents).  If the Court were to adopt Petitioner's theory, "any substantial [airline] would be amenable to suit, on any claim for relief" in any state into and out of which it flies, and Hainan would be subject to general jurisdiction in at least five U.S. states.  *Goodyear*, 564 U.S. at 929.  Petitioner's notion of what facts are adequate to establish general jurisdiction is simply not supported by established precedent.  The fact that Hainan operates flights into and out of New York, contracts with U.S. providers, and signed agreements with the Port Authority is just not sufficient to subject Hainan to general jurisdiction in New York.  *See Mali v. British Airways*, No. 17-CV-685, 2018 WL 3329858, at *6 (S.D.N.Y. July 6, 2018) (holding that operating flights in and out of New York airports is not an adequate basis for general jurisdiction); *see also McConney v. Amtrak*, No. 18-CV-5290, 2020 WL 435366, at *3 (E.D.N.Y. Jan. 28, 2020) (holding Amtrak is not subject to general jurisdiction even though it conducts significant transportation business in New York).

### c. Grand China

Petitioner's allegations concerning Grand China's connections to New York are the flimsiest of the bunch.  In essence, Petitioner contends that this Court may exercise general jurisdiction over Grand China because it maintains a fleet of 15 or more bulk carriers that operate throughout the world, including at New York's ports.  Am. Petition ¶ 8.  This contact alone is insufficient for the exercise of jurisdiction pursuant to N.Y. C.P.L.R. § 301, let alone sufficient to satisfy due process.  *See Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 340 (S.D.N.Y. 2018) (finding "mere fact that [corporations] provide intercontinental transportation services" does not establish a basis for general jurisdiction); *Hatfield v. Asphalt Int'l, Inc.*, No. 03-CIV-172, 2004 WL 287680, at *3 (S.D.N.Y. Feb. 11, 2004) (calling at New York ports, defending litigation in New York, and applying to U.S. regulators are "clearly insufficient to make the exercise of personal jurisdiction over them proper under [N.Y.] C.P.L.R. § 301").

### d. Alter-Ego Theory

Rather than having the Court assess Moving Respondents' contacts in isolation, Petitioner urges that, because Moving Respondents are all alter egos of one another, the Court should assess their contacts with New York in the aggregate.  *See* Am. Petition ¶¶ 6–8 (alleging that Hainan and Grand China are alter egos of HNA); *id.* ¶¶ 15–55 (pleading facts allegedly demonstrating that all four Respondents are part of a single entity headed by HNA); Pet. Resp. at 1 & n.1 (asserting that Petitioner has properly pled alter-ego liability); *id.* at 12–17 (discussing Moving Respondents' contacts without distinction and arguing that collective contacts are sufficient to establish personal jurisdiction); *id.* at 19 n.22 ("Petitioner has absolutely alleged sufficient facts to support an alter-ego cause of action which will be resolved at trial.").

An alter-ego theory of jurisdiction is appropriate when one "entity truly dominates another so that the two are indistinguishable for practical purposes." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 393 (S.D.N.Y. 2014). The standard for establishing that entities are alter egos is "relaxed where the alter-ego theory is used not to impose liability, but merely to establish jurisdiction." *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 681 (S.D.N.Y. 2016) (cleaned up). Under this theory, "'alter egos are treated as one entity' for jurisdictional purposes." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991)). Thus, assuming that Petitioner has alleged sufficient facts demonstrating that Moving Respondents are alter egos of one another, at least at the motion to dismiss stage, the Court may treat HNA, Hainan, and Grand China as one entity when determining whether they are subject to this Court's general jurisdiction.

In this case, the Court need not determine whether Petitioner has alleged sufficient facts to support its alter-ego theory because, even if all jurisdictional facts are aggregated across Moving Respondents, Petitioner has failed to allege facts sufficient to subject them to general jurisdiction in New York. Even after imputing Hainan and Grand China's contacts to HNA, the collective contacts still would not render the combined entity "at home" in New York. Hainan's flights into and out of New York — and alleged ancillary activities in support of its airline business — and Grand China's use of New York's ports neither "shift[s] [Moving Respondents'] primary place of business (or place of incorporation)" from China, nor renders Moving Respondents' contacts so systematic or continuous such that this becomes the exceptional case in which the Court may exercise general jurisdiction. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014). Ironically, including Hainan's and Grand

China's activities in the analysis is counterproductive to Petitioner's argument; the Court must consider Moving Respondents' collective contacts with New York in relation to their collective contacts outside New York.  Hainan and Grand China plainly engage in significant and substantial activities worldwide.  Considered collectively, the New York contacts of Moving Respondents pale in comparison to their worldwide activity, foreclosing the possibility of their being subject to general jurisdiction in New York.  *See Daimler,* 571 U.S. at 139 n.20 ("General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.").  In short, considering Moving Respondents' activities as those of a single entity for jurisdictional purposes does not change the Court's conclusion that Petitioner has failed to allege facts demonstrating that Moving Respondents are subject to general jurisdiction in New York.

## B.      Specific Jurisdiction

In the alternative, Petitioner contends that the Court may exercise specific jurisdiction over Moving Respondents based on their "continuous and systematic course of business" in New York and "the fact that they own real estate which can be attached to satisfy [Jinhai's] underlying debt."[9]  Pet. Resp. at 12.  Because Petitioner cannot satisfy a critical aspect of specific

---

[9]      Some courts, including within this circuit, have found that "minimal contacts are not required for a court to exercise jurisdiction over assets to permit a party to collect on an arbitration award" when "*quasi in rem* jurisdiction is used to attach property to collect a debt based on a claim already adjudicated in a forum where there was personal jurisdiction over the defendant."  *CME Media Enters. B.V. v. Zelezny,* No. 01-CV-1733, 2001 WL 1035138, at *3–4 (S.D.N.Y. Sept. 10, 2001) (citing *Shaffer,* 433 U.S. at 210 & n.36); *see also Crescendo Mar. Co. v. Bank of Comms. Co.,* No. 15-CV-4481, 2016 WL 750351, at *5 (S.D.N.Y. Feb. 22, 2016) (holding that respondent's assets in New York gave the court *quasi in rem* jurisdiction to hear petition and to enforce arbitral awards despite no showing that the assets were related to petitioner's claim); *but see Glencore AG v. Bharat Aluminum Co.,* No. 10-CV-5251, 2010 WL 4323264, at *9 (S.D.N.Y. Nov. 1, 2010) (holding that despite defendants' in-state property and bank assets, the court lacked *quasi in rem* jurisdiction because the defendants lacked sufficient minimum contacts with the forum).

Petitioner has not asserted a *quasi in rem* theory or sought to attach HNA's properties as the basis for exercising jurisdiction over Moving Respondents.  In both its Amended Petition and its opposition brief, Petitioner relies on HNA's property in New York and the potential to attach that property to satisfy a judgment as a basis for asserting *specific personal* jurisdiction only.  *See* Pet. Resp. at 12.  Petitioner never mentions *quasi in rem* jurisdiction, relying exclusively on its arguments concerning *in personam* jurisdiction as the basis for this Court to

jurisdiction — a substantial connection between the cause of action and Moving Respondents' contacts in New York — the Court does not have specific jurisdiction over Moving Respondents.

### 1.  Legal Standard

New York's long-arm statute, which the Court must apply, provides that, "[a]s to a cause of action *arising from any of the acts enumerated in this section*, a court may exercise personal jurisdiction over any non-domiciliary" who "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state" or "(4) owns, uses or possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a) (emphasis added).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci*, 732 F.3d at 168).  "Similar to personal jurisdiction requirements under Section 302(a)(1), to allege personal jurisdiction over a non-domiciliary defendant under Section 302(a)(4), a plaintiff must demonstrate 'a relationship between the property and the cause of action sued upon.'"  *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 390 (E.D.N.Y. 2015) (quoting *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 159 (1st Dep't 1992)).  Thus, for there to be specific jurisdiction under New York's long-arm statute, the claim must arise from the defendant's business activity, property ownership, or other contact with the State.

---

deny the motion to dismiss.  Similarly, Petitioner seeks jurisdictional discovery only to uncover more "dealings and continuous activities within New York for the purpose of supporting *personal* jurisdiction," not *quasi in rem* jurisdiction.  *Id.* at 24 (emphasis added).  As a result, the Court does not consider whether Petitioner might have had a valid *quasi in rem* theory of jurisdiction over some or all Moving Respondents, instead finding that Petitioner waived any possible *quasi in rem* arguments it may have had by failing to plead or brief those contentions.  *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 n.6 (2d Cir. 2003) (finding that defendant abandoned personal jurisdiction defense by failing to raise it in its brief); *see also Jackson v. Federal Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").

If personal jurisdiction under the state's long-arm statute is proper, the Court must next "analyze whether personal jurisdiction comports with the Due Process Clause," which itself entails two related components: "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164. The minimum contacts inquiry requires the Court to "determine whether the [respondent] has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe*, 326 U.S. at 316). "Where the claim arises out of, or relates to, the [respondent's] contacts with the forum — i.e., specific jurisdiction — minimum contacts exist where the [respondent] purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (cleaned up).

In conducting the reasonableness inquiry of the due process analysis, the Court must assess "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164 (quoting *Int'l Shoe*, 326 U.S. at 316). To the extent minimum contacts exist, a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The Supreme Court has instructed courts to consider five factors in conducting the reasonableness inquiry: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the

shared interest of the states in furthering social substantive policies." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113–14 (1987)).

### 2.  Application

Petitioner fails to allege any connection between the underlying action and Moving Respondents' contacts with New York.  Instead, Petitioner relies on the same generalized contacts with New York that allegedly support general jurisdiction to argue that specific jurisdiction exists.  Pet. Resp. at 12.

Petitioner seeks to confirm and enforce arbitration awards that were issued by a foreign arbitrator in a foreign arbitration.  Am. Petition ¶¶ 13–14, 65.  The underlying contracts at issue involve shipbuilding at a Chinese shipyard.  *Id.* ¶ 9.  The contracting parties are both foreign companies, incorporated and headquartered outside of the United States.  *Id.* ¶¶ 4–5.  The Moving Respondents (who were not parties to the arbitration) are foreign companies whose sole contacts with New York are wholly unrelated to the shipbuilding contracts.  *Id.* ¶¶ 6–8.  Simply put, this case has no connection to New York.  Because Petitioner has failed to allege any connection between the present action and Moving Respondents' New York contacts, there is no basis for long-arm jurisdiction under C.P.L.R. § 302(a).

Petitioner also argues, however, that Moving Respondents are subject to specific jurisdiction pursuant to C.P.L.R. § 302(a)(4) because their real estate in New York can be attached to satisfy Jinhai's debt.  Pet. Resp. at 12.  But for C.P.L.R. § 302(a)(4) to bestow specific personal jurisdiction over a foreign company, Petitioner must allege that the cause of action arises out of Respondents' New York property.  *See Karoon v. Credit Suisse Grp. AG*, No. 15-CV-4643, 2016 WL 815278, at *5 (S.D.N.Y. Feb. 29, 2016).  Petitioner has failed to allege any connection between any of the property HNA allegedly owns in New York and the

arbitration awards or the underlying contracts.  Thus, C.P.L.R. § 302(a)(4) does not provide a basis for this Court to exercise personal jurisdiction over Moving Respondents.

Even if Petitioner could somehow shoehorn this case into C.P.L.R. § 302, exercising jurisdiction in this case would run afoul of due process protections.  There is simply no "meaningful connection" between New York and Moving Respondents' "suit-related conduct." *Id.* at *4; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").  Thus, this Court has no basis for exercising specific jurisdiction over Moving Respondents.

## C.   Rule 4(k)(2)[10]

Petitioner argues that, should the Court conclude there is no personal jurisdiction over Moving Respondents pursuant to the New York long-arm statute, then the Court should exercise personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), colloquially known as the "federal long-arm statute."  *See BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 598–99 (S.D.N.Y. 2017) (quotation omitted).

"Rule 4(k)(2) was specifically designed to correct a gap in the enforcement of federal law in international cases."  *Porina v. Marward Shipping Co.*, 521 F. 3d 122, 127 (2d Cir. 2008) (cleaned up).  Rule 4(k)(2) "permits federal courts to exercise personal jurisdiction over a

---

[10]   Petitioner first raised Rule 4(k)(2) as a basis for personal jurisdiction in its brief in opposition to the motion to dismiss.  Petitioner neither invoked Rule 4(k)(2) nor attempted to plead facts that would suggest reliance on Rule 4(k)(2) as the basis for personal jurisdiction; instead, its pleading was singularly focused on establishing the propriety of personal jurisdiction in New York.  Nevertheless, the Court will consider Petitioner's Rule 4(k)(2) arguments.  *See RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 545 (S.D.N.Y. 2018) (opting to hear plaintiff's 4(k)(2) argument raised for the first time in its opposition brief); *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*, No. 16-CV-5883, 2018 WL 3639929, at *12 & n.46 (S.D.N.Y. July 10, 2018) (citing *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012), and *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551–52 (7th Cir. 2001), to support hearing Rule 4(k)(2) argument that plaintiff failed to plead).

defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole." *BMW*, 254 F. Supp. 3d at 598–99 (quotation omitted). Under Rule 4(k)(2), a plaintiff can establish personal jurisdiction if: (1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction is consistent with the U.S. Constitution and laws. Fed. R. Civ. P. 4(k)(2).

In assessing whether the exercise of jurisdiction would be consistent with the Constitution, the relevant inquiry is whether jurisdiction comports with due process. *In re Aluminum Warehousing Antitrust Litig.,* No. 15-CV-8307, 2020 WL 2036716, at *10 (S.D.N.Y. Apr. 28, 2020). The Rule 4(k)(2) jurisdictional analysis mirrors that of the standard personal jurisdiction analysis, except in one critical respect: The due process analysis for Rule 4(k)(2) jurisdiction hinges on whether the non-resident has sufficient minimum contacts with the United States as a whole instead of with the specific forum state. *See Porina*, 521 F.3d at 127. A plaintiff may seek to establish contacts supporting either specific or general jurisdiction under Rule 4(k)(2). *See id.* at 127–28. If sufficient minimum contacts are demonstrated, the Court must then consider whether the "assertion of personal jurisdiction 'is reasonable under the circumstances of the particular case.'" *Id.* at 127 (quoting *Metro. Life*, 84 F.3d at 568).

Because the petition seeking confirmation of the arbitration awards arises under the FAA and the New York Convention, Petitioner has satisfied the initial requirement that the cause of action arise under federal law. Am. Petition ¶ 57; Pet. Resp. at 20. The Court also assumes without deciding that Petitioner has satisfied the second requirement, a showing that Moving Respondents are not subject to general jurisdiction in the courts of any state. Moving Respondents are not subject to personal jurisdiction in New York, and they make no effort to

establish that they might be subject to personal jurisdiction in any other state, seemingly

conceding that Petitioner can satisfy the second prong of the Rule 4(k)(2) inquiry.[11]  *See* Resp.

Reply at 7–8.  For substantially the same reasons articulated above, however, the Court finds that

exercising jurisdiction over Moving Respondents would not comport with due process, leaving

Petitioner unable to satisfy the third element of the Rule 4(k)(2) analysis.

　　　As discussed above, this case does not arise out of, nor is it related in any way to,

Respondents' contacts with the United States.  Petitioner's attempt to establish jurisdiction

pursuant to Rule 4(k)(2) seemingly acknowledges that it must rely on general rather than specific

jurisdiction, stating only that Respondents have "repeatedly transact[ed] business in New York

and the United States generally," and reasserting the "significant business," entirely unrelated to

this action, in which Moving Respondents have engaged in the United States.  *See* Pet. Resp. at

20–21.

　　　Just as Petitioner's allegations concerning Moving Respondents' contacts are plainly

insufficient to support the exercise of general jurisdiction in New York, so too do they fall short

of establishing the propriety of general jurisdiction over Moving Respondents under the federal

long-arm statute.  Because Moving Respondents are all foreign companies, Petitioner must

demonstrate that this is the exceptional case contemplated in *Daimler*.  Expanding the scope of

the analysis from New York to the greater United States does little to raise this to the exceptional

case in which Moving Respondents' contacts are so systematic and continuous as to render them

"at home" in the United States.

---

[11]　　Circuit courts appear to be split on the issue of who bears the burden of demonstrating that the defendant is not subject to personal jurisdiction in any state; the Second Circuit has not yet addressed this issue.  *See RegenLab*, 335 F. Supp. 3d at 546–47.  Because the Court finds that Petitioner has failed to demonstrate that jurisdiction under Rule 4(k)(2) would comport with due process, this Court need not grapple with the issue of which party bears the burden at the second step of the analysis.

In its attempt to establish that Moving Respondents have minimum contacts with the United States for the purposes of Rule 4(k)(2) jurisdiction, Petitioner adds no new specific allegations to the facts cited in support of its argument for jurisdiction under New York's long-arm statute.  *See* Pet. Resp. at 20–21.  Petitioner also fails to compare Moving Respondents' activities in the United States to their activities outside the United States.  *See Chufen Chen*, 954 F.3d at 500 (finding no general jurisdiction because defendant was not incorporated or headquartered in forum state and because plaintiff "made no showing that the company's relationship with [the forum state] was in any way significant or exceptional *in relation to the company's nationwide business activity*" (emphasis added)).  Widening the aperture from New York to the United States permits the Court to consider additional contacts, such as flights to other cities, real estate transactions in other states, investments in or contracts with U.S.-based companies, such as Hilton and Boeing, and benefits received under U.S. legislation such as the CARES Act.[12]  But these contacts still fall short of establishing general jurisdiction when viewed in relation to Moving Respondents' worldwide business activity.  *See Sonera Holdings*, 750 F.3d at 226 ("Even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum.") (quoting *Daimler*, 571 U.S. at 138)).

Even if Petitioner had established that Moving Respondents possessed the necessary minimum contacts with the United States as a whole, Petitioner has failed to show that the exercise of jurisdiction would be "reasonable" under these circumstances.  As noted above, in assessing reasonableness, courts must consider the five factors set out in *Asahi*.  Petitioner nakedly asserts that "all five elements are met here" because Respondents have engaged in

---

[12]     As noted *supra* note 7, it is questionable whether these purported contacts could be imputed to HNA for purposes of determining whether it is subject to general jurisdiction both in New York and under Rule 4(k)(2).

regular and systematic contacts with New York and because of the Court's "interest in upholding the right to recognize and enforce arbitration awards." Pet. Resp. at 21. Petitioner's argument is conclusory and entirely circular; the point of the reasonableness test is to determine whether it would be unconstitutional to exercise jurisdiction *even if* Respondents have sufficient minimum contacts with the United States.

Moving Respondents, on the other hand, persuasively argue that exercising jurisdiction under Rule 4(k)(2) would be unreasonable. *See* Resp. Reply at 8. Because there is absolutely no nexus between this action, Respondents, and the United States, "[n]one of the evidence, witnesses, or other materials related to any alter-ego analysis or award confirmation is located [in New York or the broader United States]." *Id.* Furthermore, this dispute does not "implicate[] the interests of the United States," because none of the parties is a resident of the United States and the cause of action did not arise in the United States. *See Norvel Ltd. v. Ulstein Propeller AS,* 161 F. Supp. 2d 190, 207 (S.D.N.Y. 2001). Nor can there be any contention that it would be more convenient to litigate this case in the United States than elsewhere, *id.*, especially inasmuch as there are actions to confirm the arbitration awards already pending in China, the home country of each of the Respondents. Qiu Decl. ¶¶ 14–19. Thus, even had Petitioner succeeded in demonstrating sufficient minimum contacts with the United States, these factors demonstrate that it would be unreasonable for this Court to exercise jurisdiction over Moving Respondents. In short, Rule 4(k)(2) does not provide an alternative avenue pursuant to which this Court may exercise personal jurisdiction over Moving Respondents.

## III.   Jurisdictional Discovery

Petitioner has requested an opportunity to take jurisdictional discovery should the Court conclude that it has failed to allege adequately personal jurisdiction. Pet. Resp. at 24–25.

Although jurisdictional discovery is sometimes available for plaintiffs who are unable to establish a *prima facie* case of personal jurisdiction in their complaint, district courts have discretion to deny such requests, despite the difficulties plaintiffs may face in otherwise making a *prima facie* showing of jurisdiction.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185–86 (2d Cir. 1998).  Petitioner requests jurisdictional discovery to uncover additional "systematic and continuous dealings with New York."  Pet. Resp. at 25.  Considering the extent of Moving Respondents' global activity, more evidence of Moving Respondents' business dealings in New York would not cure the jurisdictional deficiencies.  What Petitioner seeks are examples of business activity, primarily unrelated to Moving Respondents' primary businesses, that are certain to be insufficient to subject Moving Respondents to general jurisdiction in this Court. *See* Pet. Resp. at 13 n.14 (listing potential contacts such as hiring realtors, attorneys, and accountants to assist in real estate transactions and corporate functions as potentially discoverable material).  Therefore, Petitioner's request for jurisdictional discovery is denied.  *See Monsanto Int'l Sales Co. v. Hanjin Container Lines, Ltd.*, 770 F. Supp. 832, 838–39 (S.D.N.Y. 1991) ("While discovery on the question of personal jurisdiction is sometimes appropriate when there is a motion to dismiss for lack of jurisdiction, [Petitioner] must first make a threshold showing that there is some basis for the assertion of jurisdiction.").

## CONCLUSION

For the forgoing reasons, Moving Respondents' motion to dismiss is GRANTED, and Petitioner's request for jurisdictional discovery is DENIED.  The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 67.

Petitioner does not appear to have served the original Petition or Amended Petition on Respondent Jinhai.  Not later than **January 29, 2021**, Petitioner must show cause why the Court should not dismiss this matter as to Jinhai, the sole remaining Respondent, for failure to serve.

**SO ORDERED.**

**Date:  January 18, 2021**
　　　**New York, New York**　　　　　　　　　　**VALERIE CAPRONI**
　　　　　　　　　　　　　　　　　　　　　**United States District Judge**